1   AUTUMN M. ELLIOTT (CA BAR NO. 230043)
    Autumn.elliott@disabilityrightsca.org
2   LUCIA CHOI (CA BAR NO. 307384)
3   Lucia.choi@disabilityrightsca.org
    DISABILITY RIGHTS CALIFORNIA
4   350 South Bixel Street, Suite 290
    Los Angeles, CA  90017
5   Tel:   (213) 213-8000
6   Fax:   (213) 213-8001

7   AARON J. FISCHER (CA BAR NO. 247391)
8   ajf@aaronfischerlaw.com
    LAW OFFICE OF AARON J. FISCHER
9   2001 Addison Street, Suite 300
    Berkeley, CA 94704
10  Tel:   (510) 806-7366
    Fax:   (510) 694-6314
11

12  STUART SEABORN (CA BAR NO. 198590)
    sseaborn@dralegal.org
13  DISABILITY RIGHTS ADVOCATES
14  2001 Center Street, 4th Floor
    Berkeley, CA  94704-1204
15  Tel:   (510) 665-8644
    Fax:   (510) 665-8511
16

17  *Attorneys for Plaintiff*
    (Additional Counsel Listed on Next Page)
18
                **UNITED STATES DISTRICT COURT**
19              **CENTRAL DISTRICT OF CALIFORNIA**

20  ┌─────────────────────────────┬──────────────────────────
    Robin Cline,                    **Case No. 2:22-cv-2335**
21
             Plaintiff,             **CLASS ACTION**
22
                                    **CIVIL RIGHTS COMPLAINT**
23  v.                              **FOR VIOLATIONS OF:**

24                                   1. Title II of the ADA, 42 U.S.C.
25  WEST LOS ANGELES COLLEGE             § 12131 *et seq.*
    and LOS ANGELES COMMUNITY        2. Section 504 of the Rehabilitation
26  COLLEGE DISTRICT,                   Act, 29 U.S.C. § 794 *et seq.*
                                     3. Cal Gov't Code § 11135
27           Defendants.             4. Cal Educ. Code § 66270
                                     5. Cal Civ. Code § 51
28

1

Additional Counsel (cont'd from previous page)

2

3

ERIN GALLAGHER (*Pro Hac Vice* pending)

4

egallagher@dralegal.org
DISABILITY RIGHTS ADVOCATES

5

655 Third Avenue, 14th Floor
New York, NY 10017-5621

6

Tel: (212) 644-8644

7

Fax: (212) 644-8636

8

*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Cline v. WLAC et al.*, Case No.
Complaint

# INTRODUCTION

1.    For years, West Los Angeles College ("WLAC") and the Los Angeles Community College District ("LACCD," together with WLAC, "Defendants") have denied Plaintiff Robin Cline, as well as other individuals with disabilities, equal access to WLAC's campus. Defendants have failed to provide Plaintiff and other individuals with disabilities with on campus transportation assistance necessary to allow them meaningful access to the programs, activities, and services on WLAC's campus.

2.    WLAC is located on a hillside, with elevation changes between parking lots, campus entrances, and other facilities. It is designed in such a way that people on campus must traverse long distances to get between campus locations, particularly from the entrances and parking lots to the main classrooms and library. As a result, individuals with disabilities that make it difficult for them navigate long distances, on uneven terrain, and/or on inclines, require transportation assistance to attend classes and participate in student activities and programs on WLAC's campus.

3.    Despite the clear barriers on campus, Defendants refuse to provide any transportation assistance to Plaintiff or others with disabilities. Defendants have been aware that this refusal has made WLAC's campus inaccessible for people with disabilities ever since they terminated the prior on-campus shuttle service in 2016.

4.    The awareness that their actions violate federal and state law was sharpened in 2020 when the Ninth Circuit Court of Appeals found that two individuals with disabilities that affect their ability to walk long distances (like the Plaintiff here) were denied meaningful access to the educational services and programs offered by Defendants. *See Guerra v. W. Los Angeles Coll.*, 812 F. App'x 612 (9th Cir. 2020).

5.      Despite the clear direction from the Ninth Circuit, Defendants have still refused to provide transportation assistance to people with disabilities that make it difficult to navigate long distances, on uneven terrain, and/or on inclines, including the Named Plaintiff. This denies them meaningful access to the programs, services, and activities on WLAC's campus in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California anti-discrimination laws.

6.      Named Plaintiff Robin Cline has a disability that makes it difficult for her to navigate long distances, on uneven terrain, and/or on inclines. She brings this action on behalf of herself and all persons with disabilities who are being discriminated against and denied meaningful access to the programs, activities, and services on WLAC's campus because their disabilities make it difficult to navigate long distances, on uneven terrain, and/or on inclines.

7.      Ms. Cline is a community college student with a disability. She formerly worked as a registered nurse in a hospital in Culver City, as well as other hospitals in Los Angeles. Now that her multiple sclerosis symptoms make her unable to spend long hours on her feet at the hospital, she is taking community college courses at WLAC to obtain a psychology degree and a certificate in addiction studies, in order to find a less physically demanding nursing job.

8.      Ms. Cline's multiple sclerosis symptoms include weakened muscles, fatigue, and extreme susceptibility to heat, which can make her light-headed when she walks. This prevents her from walking long distances, especially when it is warm. Despite her difficulty walking between her car and classrooms, as well as between buildings on campus, Defendants refuse to provide her with transportation assistance or any alternative measures necessary that would allow her to meaningfully access the educational services and programs offered on the WLAC campus.

*Cline v. WLAC et al.*, Case No.
Complaint

9.      Each day that Ms. Cline perseveres by navigating the campus on her own puts her at significant risk of physical and other harm. She has suffered multiple falls on WLAC's campus as a result of Defendants' failure to provide transportation assistance and she overheats on warm days.

10.     Defendants' persistent failure to provide transportation assistance on WLAC's campus has harmed and continues to harm Ms. Cline, as well as other individuals with disabilities, in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and California state civil rights law. Thus, Plaintiff brings this civil-rights lawsuit against Defendants on behalf of herself and a putative class of all other all individuals who have disabilities that make it difficult to navigate long distances, up inclines, and/or on uneven terrain, and attend, would like to attend, or will attend on-campus classes or events at West Los Angeles College.

## JURISDICTION

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. The Court has jurisdiction to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

## VENUE

12.     Venue is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391, and a substantial part of the events, acts and omissions giving rise to the claims occurred in Los Angeles County, in this District.

## PARTIES

### A.    Plaintiff

13.     Named Plaintiff Robin Cline has multiple sclerosis, a condition that substantially limits her ability to walk. She has weak muscles and is highly susceptible to heat, which can make her light-headed when she walks. She is a

"qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926. She has experienced and continues to experience access barriers in navigating WLAC's campus and accessing the programs, activities, and services offered by Defendants on WLAC's campus due to Defendants' ongoing violations.

### B.    **Defendants**

14.    Defendant WLAC is a public community college located in Culver City, Los Angeles County, California.

15.    At all relevant times, WLAC is and has been a public entity within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

16.    At all relevant times, WLAC has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

17.    At all relevant times, WLAC has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

18.    Defendant LACCD is the community college district serving the City of Los Angeles, California, and some of its neighboring cities. Its campuses and offices are located in Los Angeles.

19.    At all relevant times, LACCD is and has been a public entity within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

20.    At all relevant times, LACCD has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

*Cline v. WLAC et al.*, Case No.
Complaint

21.     At all relevant times, LACCD has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

22.     Defendants are sued in their own right and on the basis of the acts of their officials, agents, trustees, and employees.

## FACTS

### A.    WLAC and LACCD

23.     West Los Angeles College is a community college in Culver City, California. It serves between 16,000 and 19,000 students over the course of a year, the majority of whom are people of color, and the majority of whom are women.[1] WLAC claims on its website that "[a]ll students at West have the opportunity for success."[2] Its mission includes providing "a transformative educational experience" to "foster[] a diverse learning community committed to student success, racial equity, social justice, and environmental responsibility."[3] The mission further indicates that WLAC "enriches students with the knowledge and skills needed to earn associate and baccalaureate degrees and certificates; to transfer; to build careers; and to pursue life-long learning."[4]

24.     WLAC is part of nine colleges that make up the Los Angeles Community College District. LACCD is the largest community college district in the United States and one of the largest in the world.

---

[1] WLAC, About West, www.wlac.edu/About/index.aspx (last visited Apr. 5, 2022).

[2] WLAC, About West, www.wlac.edu/About/index.aspx (last visited Apr. 5, 2022).

[3] WLAC, Vision, Mission & Values, http://www.wlac.edu/About/Mission-Values.aspx (last visited Apr. 5, 2022).

[4] WLAC, Vision, Mission & Values, http://www.wlac.edu/About/Mission-Values.aspx (last visited Apr. 5, 2022).

*Cline v. WLAC et al.*, Case No.
Complaint

**B.**    **WLAC's Campus is Inaccessible to People Who Have Disabilities Impacting Their Ability to Navigate Long Distances or Difficult Terrain**

25.    WLAC is geographically situated on a hillside, with terrain that is uneven in many places and significant elevation changes between arrival points and where services are provided, as well as long distances between these arrival points and services, among other barriers to accessibility for people with disabilities.

26.    WLAC was designed with the classrooms and student services buildings generally in the center of campus and the parking generally around the periphery. As a result, to go from the parking lots to the general campus area, between certain campus buildings, and between the southeast campus entrance and the general campus area, students must climb stairways or traverse slopes, and travel long distances.

27.    This means that WLAC's campus is inaccessible to people with disabilities that make it difficult to navigate long distances, on uneven terrain, and/or on inclines. Such individuals, including Plaintiff, are thus precluded from accessing the programs, activities, and services on WLAC's campus.

**C.**    **WLAC Operated a Campus Shuttle Service for Several Years**

28.    WLAC purchased an "ADA Tram w/Wheelchair modification" for $13,940.00 in 2010. From approximately August 2011 to February 2016, WLAC offered an on-campus shuttle service (the "Campus Shuttle").

29.    The Campus Shuttle service provided multi-seat shuttles, or trams, that were available seven days a week. The Campus Shuttle had a designated map and picked up and dropped off students at locations across the campus, including campus entrances, parking lots, classrooms, and other campus buildings.

30.    The Campus Shuttle was a critical means for people with disabilities to reach all areas of campus, including classroom buildings, the library, the

1    bookstore, WLAC student service offices, and other campus locations, as well as
2    between campus locations that are far apart and/or on different tiers of elevation. It
3    provided people with disabilities access to classes and other on-campus programs
4    and services.

5        31.    Defendants recognized the importance of providing such a service to
6    people with disabilities. The Campus Shuttle map prominently stated that
7    "DISABLED PASSENGERS ARE GIVEN PRIORITY," and the Staffing Request
8    for a "Paratransit Shuttle Driver" described the duties of the Campus Shuttle
9    drivers as, "providing shuttle/transport services to students on the terraced and
10   hilly terrain at WLAC per ADA guidelines, and to aid those students with related
11   needs during transport."

12       32.    People with disabilities could, and regularly did, call the Campus
13   Shuttle service number for "door-to-door" service, and the shuttle would pick them
14   up wherever they were on campus and take them to their destination elsewhere on
15   campus.

16       33.    Named Plaintiff Robin Cline used the Campus Shuttle service when
17   she was on campus before Defendants terminated the service.

18       **D.    Defendants' Termination of the Campus Shuttle Service**

19       34.    Defendants terminated the WLAC Campus Shuttle service in
20   February 2016.

21       35.    Following the termination of the shuttle service, the school continued
22   to provide transportation to persons with disabilities on the WLAC campus using
23   Sheriffs' golf carts for a brief period until March 22, 2016, when WLAC
24   announced that it would no longer provide any form of transportation assistance to
25   students with disabilities.

26       36.    A memorandum issued by the Director of Risk Management for
27   LACCD stated "[t]here is no court decision requiring any of you to provide ADA
28

*Cline v. WLAC et al.*, Case No.
Complaint

1  shuttle service." All transportation assistance to people with disabilities was

2  terminated less than a week later.

3      37.    Transportation assistance, before Defendants terminated it, was the

4  only adequate affirmative step Defendants had taken to provide meaningful access

5  to the programs, activities, and services at WLAC for people with disabilities who

6  could not navigate the paths of travel on campus without assistance.

7      38.    Despite terminating the shuttle service for people with disabilities,

8  Defendants have continued to use golf cart transportation for Plant Facilities staff,

9  visitors, and special events on campus. Additionally, a golf cart has been issued to

10  the Office of the President at WLAC for use on campus and is used by the

11  President's secretary.

12  **E.**    **<u>Plaintiff Robin Cline Has Been And Is Denied the Benefits of</u>**

13      **<u>Defendants' Programs, Activities, and Services Due to Her</u>**

14      **<u>Disability</u>**

15      1.    <u>Robin Cline's Background and Transportation to WLAC</u>

16      39.    Ms. Cline is a registered nurse. She took classes that were

17  prerequisites to her nursing degree at WLAC in the early 1990s.

18      40.    For years, Ms. Cline worked the day shift as a registered nurse at

19  Southern California Hospital (formerly Brotman Hospital) in Culver City, as well

20  as at other hospitals in Los Angeles, a job that required her to spend hours working

21  on her feet.

22      41.    However, Ms. Cline can no longer perform that work because she is

23  substantially limited in her ability to walk and can no longer spend long hours on

24  her feet at the hospital. Due to multiple sclerosis, she has weak muscles, fatigue,

25  and extreme susceptibility to heat, which can make her light-headed when she

26  walks. She has used a cane consistently since late 2017.

27      42.    Ms. Cline has been taking additional courses at WLAC for more than

28  four years in order to obtain a psychology associates degree, along with a

*Cline v. WLAC et al.*, Case No.
Complaint

1    certificate in addiction studies which will allow her to obtain a job that will require

2    less time on her feet.

3        43.    Although she lives in Northridge, Ms. Cline attends class at WLAC

4    because the air temperature at WLAC is cooler than in the Valley, which is

5    significantly better for her management of her medical condition.

6        44.    Ms. Cline drives herself to WLAC and back. Driving her own car

7    allows her to be independent, and she plans to drive for as long as she is physically

8    able to do so.

9        45.    When she arrives on campus, Ms. Cline parks in the South Parking

10   Structure, which is the closest option to the classroom buildings.

11              2.    <u>Robin Cline Cannot Fully Access WLAC's Campus Due to Her</u>

12                    <u>Disability</u>

13       46.    While Ms. Cline is committed to her education, walking to her classes

14   from the South Parking Structure is extremely difficult because of the distance.

15   Additionally, getting around campus can require traversing not only distances but

16   uneven terrain and significant elevation changes. The distances and terrain have

17   caused her to fall multiple times while on campus. One such instance occurred in

18   the spring of 2019 when walking from the library to the General Classrooms

19   building in a sloped area, and another occurred in the fall of 2019 on her way to

20   her car from the Math & Science Complex while traversing a sloped and poorly lit

21   area, causing her to hit her head.

22       47.    The long distances that Ms. Cline must walk to get to WLAC's

23   services and programs become even more difficult on warm days. The sun beats

24   down on the path where Ms. Cline must walk to get from the South Parking

25   Structure to either the General Classrooms building or the Math & Science

26   Complex and it takes her 45 minutes to one hour to complete that walk. For Ms.

27   Cline to get to class at all on these warm days, she has to take breaks and pour

28   water on her head in an effort to prevent overheating. She is often late to class

1  because of the distance and terrain she must navigate to get to and between classes,

2  especially on warm weather days.

3      48.    Because of the campus's inaccessibility and Defendants' denial of

4  transportation assistance, Ms. Cline's participation in academic and student life has

5  been significantly restricted.

6      49.    For example, in the spring semester of 2019, Ms. Cline was forced to

7  drop a Statistics class. Due to the distances and terrain of the campus, she could not

8  walk from her Computer Science class to her Statistics class by the start time of her

9  Statistics class. When she was late one too many times, the Statistics professor

10  dropped her from the class.

11      50.    If WLAC had provided transportation assistance to Ms. Cline, she

12  would not have had to drop the Statistics class. Instead, she could have taken a full

13  load of courses. This incident, compounded with others, has prevented her from

14  scheduling any back-to-back courses in the years since because she does not want

15  to be forced to start and drop a class again.

16      51.    Due to her sensitivity to the heat, Ms. Cline must plan her class

17  schedule to avoid direct sun exposure for extended periods of time. She generally

18  avoids taking summer school courses or scheduling courses in the mid-afternoon

19  because of the long walk from her car. Even when she takes a morning class, she

20  sometimes has to spend hours in the library to wait for some shade before she can

21  return to her car. It also requires her to make the difficult choice to miss classes

22  when it is too warm, something that occurred regularly in the spring and fall

23  semesters of 2019 when she missed approximately 2-3 sessions of each of her

24  registered classes, as well as a couple times in the spring of 2020 before campus

25  closed due to the COVID-19 pandemic.

26      52.    On at least one occasion during the Fall 2019 semester, Ms. Cline

27  drove to campus for her Psychology class and started walking to class, but she

28  could not make it all the way there due to the heat. Ms. Cline had to find a shady

1    bench and email Professor White that it was too hot for her to make it to class.

2    When she was able to cool down enough, she went to the library to do some work

3    so that the drive to WLAC would not be a complete waste, but she missed valuable

4    class time.

5        53.    If WLAC provided transportation assistance on campus, Ms. Cline

6    would be able to create her schedule based on her academic needs and not on

7    weather conditions, would not have to arrive at school more than an hour before

8    her classes start, and would not have to miss classes when the weather is too warm.

9        54.    The inaccessibility of the campus has also affected Ms. Cline's access

10   to other school services. On warm days, for instance, she must avoid visiting the

11   admissions office, the campus bookstore, or her guidance counselors unless she is

12   able to go in the early morning. She also has been prevented from utilizing

13   Extended Opportunity Programs and Services ("EOPS") as their office is located in

14   the "bungalow," which is an area of particularly perilous terrain, with uneven areas

15   and insufficient lighting.

16       55.    When Ms. Cline first visited the campus Disabled Students Programs

17   and Services ("DSPS") office in the fall of 2017, she was late due to her difficulty

18   walking on campus. Because of its location, it takes a least 50-55 minutes for Ms.

19   Cline to walk there from the South Parking Structure. This presents continued

20   challenges for Ms. Cline because she is required to go to this building regularly to

21   take some of her exams, including in the 2019 and 2020 school years.

22            3.    WLAC Has Denied Robin Cline Transportation Assistance

23       56.    While at the DSPS office in fall 2017, Ms. Cline asked about

24   transportation assistance because it had been so difficult to get from her car to the

25   DSPS office.

26       57.    DSPS staff told her that the Campus Shuttle service was no longer

27   provided, and that all that DSPS could offer her was early enrollment and testing

28   accommodations.

*Cline v. WLAC et al.*, Case No.
Complaint

58.     On January 10, 2018, Ms. Cline addressed the LACCD Board of Directors regarding her difficulty accessing educational services at WLAC.

59.     On January 24, 2018, Ms. Cline, through counsel, sent a letter to Defendants requesting that Defendants provide transportation assistance so she could meaningfully access her classes, and other programs and services, at WLAC's campus.

60.     On or about February 5, 2018, Ms. Cline again visited the WLAC DSPS office and met with a DSPS counselor. She explained her difficulties in accessing campus and asked for transportation assistance.

61.     The DSPS counselor denied Ms. Cline's reasonable accommodation request.

62.     Ms. Cline is aware that other students with disabilities brought a federal lawsuit regarding their difficulty accessing the campus without a reasonable accommodation. She is also aware that, despite the Ninth Circuit's *Guerra* decision (noted above), Defendants have yet to provide any accommodation to those students, or any other students with disabilities that impact their ability to meaningfully access the WLAC campus.

63.     To this date, Defendants have not provided Ms. Cline with transportation assistance or any other reasonable accommodation.

### 4.     The Harms to Ms. Cline are Ongoing

64.     Ms. Cline took on campus courses at WLAC until the campus closed in March 2020 due to the COVID-19 pandemic and she has continued taking courses online during the COVID-19 pandemic. Ms. Cline is committed to continuing with her education and intends to return to in-person attendance at WLAC as soon as she is able.

65.     Ms. Cline would like to take several in-person classes on WLAC's campus in the Fall 2022 semester. She plans to take CIS 101: Introduction to Computers and Their Uses on campus due to assistive technology available there.

1  Similarly, she wants to take Psych 74: Research Methods in Behavioral Sciences
2  on campus so she can do her coursework there and have access to the professor.
3  She would also like to take some Chemistry classes in person.

4  66.    Ms. Cline already knows that some of these classes are scheduled for
5  the middle of the day, which will require her to arrive on campus early and spend
6  time in the library before walking to class, as the heat in the middle of the day
7  would make the full walk (without assistance) from the South Parking Structure to
8  the General Classrooms Building unbearable at class time.

9  67.    Ms. Cline wants to continue to take in person LACCD classes
10 throughout her life and because of her sensitivity to heat, she will need to take such
11 classes at the relatively cooler WLAC campus.

12 68.    Although Ms. Cline is committed to her education, she is concerned
13 about her ability to access her classes safely and successfully due to the continued
14 lack of on-campus transportation. She has a lot of trepidation about returning to
15 campus as she is concerned about her safety due to the heat and terrain. It is
16 stressful for Ms. Cline to have to pay attention to every step in order to feel safe
17 and she has anxiety about making it to class on time. When she does finally arrive
18 to class, she has to take time to breathe and get composed before she can focus on
19 learning.

20 69.    Any time Ms. Cline must traverse WLAC's campus without
21 transportation assistance, she does so with a significant risk of physical and other
22 harm.

23 **F.    Other Members of WLAC's Community Are Affected by**
24 **WLAC's Inaccessible Campus**

25 70.    The Ninth Circuit confirmed that other members of WLAC's
26 community who have disabilities that affect their ability to walk long distances are
27 denied meaningful access to services, programs, and activities on WLAC's campus

28

1  due to the lack of transportation assistance. *See Guerra v. W. Los Angeles Coll.*,

2  812 F. App'x 612 (9th Cir. 2020).

3       71.    In addition to the plaintiffs in the *Guerra* case, WLAC professor Jack

4  Ruebensaal, who has disabilities that limit his ability to navigate long distances and

5  on paths of travel with uneven terrain and elevation changes, previously relied on

6  the Campus Shuttle to get from the parking lot to the building where his office and

7  classroom are located.

8       72.    When the Campus Shuttle was terminated, Mr. Ruebensaal

9  complained and requested assistance. WLAC found that based on his "inability to

10  ambulate for any significant distance," he would be offered a reasonable

11  accommodation and be allowed to park his vehicle directly adjacent to the building

12  housing his classroom and office.

13       73.    There are other numerous members of the community who are

14  deterred from taking classes or attending events at WLAC because they have

15  disabilities that prevent them from navigating long distances and/or on paths of

16  travel with uneven terrain and elevation changes.  A former Campus Shuttle driver

17  testified that he provided transportation assistance to a substantial number of

18  people with disabilities, and that after the Shuttle was discontinued, he observed

19  many of them having great difficulty getting around campus and that most of them

20  ultimately stopped attending WLAC.

21       **G.    Defendants Are Aware of Their Responsibilities to Students with**

22            **Disabilities**

23       74.    Defendants are aware of their responsibilities to people with

24  disabilities as directed by the Ninth Circuit in a substantially similar case, and as

25  outlined in federal and state law.

26       75.    Defendants' awareness of their responsibilities to people with

27  disabilities who cannot access WLAC's campus was sharpened in 2020 when the

28  Ninth Circuit held that two individuals who struggle to walk due to their

*Cline v. WLAC et al.*, Case No.
Complaint

1   disabilities cannot access all relevant parts of the WLAC campus and thus have

2   been denied meaningful access to WLAC's programs and services in violation of

3   Title II of the ADA and Section 504. *Guerra v. W. Los Angeles Coll.*, 812 F. App'x

4   612, 614 (9th Cir. 2020). This provided Defendants with clear notice of their

5   responsibilities to students with disabilities that make it difficult to navigate long

6   distances, on uneven terrain, and/or on inclines, like Ms. Cline and the putative

7   class.

8       76.    Following this decision, Defendants have still failed to address the

9   denial of meaningful access to WLAC's programs and services for people with

10  disabilities that make it difficult to navigate long distances, on uneven terrain,

11  and/or on inclines in any way. Defendants still refuse to provide on campus

12  transportation assistance to anyone, including the plaintiffs in the *Guerra* case.

13      77.    In addition to this Ninth Circuit decision, Defendants are aware that

14  Title II of the ADA, Section 504 of the Rehabilitation Act, and analogous

15  California laws require public community colleges and community college

16  districts, including WLAC and LACCD, to provide meaningful access for people

17  with disabilities to their services, programs, and activities, and to provide

18  reasonable modifications to their policies and practices when necessary to afford

19  such persons meaningful access to those programs, services and activities. *See* 42

20  U.S.C. §§ 12131 *et seq.*; 29 U.S.C. § 794; Government Code § 11135 *et seq.*;

21  Education Code § 66270; Cal. Civ. Code § 51 *et seq.*

22      78.    Defendants are also aware that Federal law requires public entities to

23  operate each service, program, or activity such that the service, program, or

24  activity, "when viewed in its entirety, is readily accessible to and usable by

25  individuals with disabilities." 28 C.F.R. § 35.150(a) (regulations implementing

26  Title II); *see also* 34 C.F.R. § 104.22 (regulations implementing Rehabilitation

27  Act). Title II's implementing regulations list methods of achieving program access

28  that include, but are not limited to, "acquisition of equipment" and "use of

17

accessible rolling stock or other conveyances," 28 C.F.R. § 35.130(b)(1), such as trams or other shuttle vehicles.

79.    Defendants are also aware that California state regulations require community colleges to provide "specialized aids, devices, and/or students available to students with disabilities . . . which are in addition to the general services provided to all students" and "enable students to participate in general activities, programs and classes offered by the college." 5 C.F.R. § 56026.

80.    Defendants' termination of on-campus transportation assistance, and continued refusal to provide transportation assistance or any other assistance to ensure that Ms. Cline and other individuals with disabilities have meaningful access to the services offered on the WLAC campus, is unlawful. Defendants are aware that this denial of meaningful access is unlawful, and their actions have caused, and continue to case enormous harm—educationally, physically, and emotionally—to Ms. Cline as well as other individuals with disabilities.

**H.    Class Allegations**

81.    Plaintiff's experiences are examples of an ongoing, systemic pattern of discrimination by Defendants against individuals with disabilities.

82.    The Named Plaintiff brings this action individually, and as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class of "all individuals who have disabilities that make it difficult for them to navigate long distances, up inclines, and/or on uneven terrain, and attend, would like to attend, or will attend on-campus classes or events at West Los Angeles College" (the "Class").

83.    Named Plaintiff Robin Cline, as well as each member of the proposed class, is a "qualified person with a disability" and/or a "person with a disability" pursuant to the ADA, Section 504 of the Rehabilitation Act, and/or applicable California law.

*Cline v. WLAC et al.*, Case No.
Complaint

84.    The persons in the proposed class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

85.    While the exact number of class members is unknown to Plaintiff at this time, the former driver of the Campus Shuttle has stated that he would drive about 40 to 50 people each day, the majority of whom he observed had disabilities that made it difficult to walk, such as visible swollen legs or the use of walkers. As not every student goes to campus every day, the number of people with disabilities that make it difficult for them to navigate long distances, up inclines, and/or on uneven terrain, and attend, would like to attend, or will attend on-campus classes or events at West Los Angeles College is more than 50 and thus sufficiently numerous that joinder of all members is impracticable.

86.    The violations of the ADA, the Rehabilitation Act and related California state statutes set forth in detail herein impact all members of the proposed class because Defendants have denied and continue to deny them meaningful access to the programs, activities, and services on WLAC's campus due to the lack on-campus transportation.

87.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole. Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

88.    The claims of the Named Plaintiff are typical of the claims of the Class as a whole in that they arise from the same course of conduct engaged in by Defendants, the failure to provide on-campus transportation for people with disabilities, and the Named Plaintiff seeks the same relief as the proposed class—meaningful access to the programs, activities, and services offered on WLAC's campus. The relief sought herein will therefore benefit all class members alike.

*Cline v. WLAC et al.*, Case No.
Complaint

89.    The Named Plaintiff will fairly and adequately represent the interests of the Class. She has no interests adverse to the interests of other members of the proposed class and has retained counsel who are competent and experienced in litigation complex class actions, including large-scale disability rights class action cases.

90.    The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

1. The class is so numerous that it would be impractical to bring all class members before the Court individually;

2. There are questions of law and fact which are common to the class;

3. The Named Plaintiff's claims for declaratory and injunctive relief are typical of the claims of the class;

4. The Named Plaintiff will fairly and adequately represent common class interests and is represented by counsel who are highly experienced in class actions and the disability rights issues in this case; and

5. Defendants have acted or refused to act on grounds generally applicable to the class.

## **FIRST CLAIM FOR RELIEF**

### **Title II of the Americans with Disabilities Act**

### **42 U.S.C. §§ 12131 *et seq.***

91.    Plaintiff realleges and incorporates by reference the allegations above as if fully set forth here.

92.    Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, entitles individuals with disabilities to an opportunity to access the benefits of public entities' services, programs, or activities. It states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

1  discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R.

2  §§ 35.130(a), (b)(1).

3      93.    Defendant WLAC has been and is a "public entity" within the

4  meaning of Title II of the ADA. 42 U.S.C. § 12131.

5      94.    Defendant LACCD has been and is a "public entity" and a "special

6  purpose district" within the meaning of Title II of the ADA. 42 U.S.C.

7  § 12131(1)(B).

8      95.    The Plaintiff has been and is a qualified individual with a disability

9  within the meaning of Title II of the ADA and meets the essential eligibility

10  requirements for the receipt of Defendants' services, programs, or activities. 42

11  U.S.C. § 12131.

12      96.    WLAC and all of its educational and other benefits, activities, and

13  services are a program, service, or activity that Defendants offer within the

14  meaning of Title II of the ADA.

15      97.    Defendants are mandated to operate each program, service, or activity

16  "so that, when viewed in its entirety, it is readily accessible to and useable by

17  individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. § 35.149.

18      98.    Defendants are mandated to consider all available methods to ensure

19  meaningful access for the Plaintiff and others with disabilities. 28 C.F.R.

20  § 35.150(b)(1).

21      99.    Title II's implementing regulations list methods of achieving program

22  access that include, but are not limited to, "acquisition of equipment" and "use of

23  accessible rolling stock or other conveyances," 28 C.F.R. § 35.130(b)(1), which

24  includes shuttles.

25      100.   Public entities, including Defendants, "shall make reasonable

26  modifications in policies, practices or procedures when the modifications are

27  necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R.

28  § 35.130(b)(7).

1      101.   Public entities, including Defendants, "may not . . . utilize criteria or

2  methods of administration— (i) That have the effect of excluding individuals with

3  disabilities from, denying them the benefits of, or otherwise subjecting them to

4  discrimination; or (ii) That have the purpose or effect of defeating or substantially

5  impairing the accomplishment of the objectives of the service, program, or activity

6  with respect to individuals with disabilities; or (iii) That perpetuate the

7  discrimination of another public entity if both public entities are subject to

8  common administrative control or are agencies of the same State." 28 C.F.R.

9  § 35.130(b)(3).

10      102.   The regulations also require that "[i]n choosing among available

11  methods" for ensuring adequate program access, public entities must "give priority

12  to those methods that offer services, programs, and activities to qualified

13  individuals with disabilities in the most integrated setting appropriate." 28 C.F.R.

14  § 35.150(b)(1).

15      103.   Defendants' actions and omissions discriminate against the Plaintiff

16  on the basis of her disabilities in violation of the ADA. Defendants' discriminatory

17  conduct includes, but is not limited to:

18           a.  Maintaining discriminatory policies and practices;

19           b.  Denying Plaintiff the benefits of Defendants' services, programs,

20              and activities at WLAC;

21           c.  Failing to provide Plaintiff an opportunity to participate in or

22              benefit from Defendants' aids, benefits, or services that is equal to

23              that afforded others, and/or failing to provide Plaintiff an equal

24              opportunity to obtain the same result, to gain the same benefit, or

25              to reach the same level of achievement as that provided to others;

26           d.  Failing to provide Plaintiff and with meaningful access to

27              Defendants' services, programs, and activities at WLAC;

28

      e.  Failing to operate their programs, services, and activities at WLAC so that when viewed in its entirety, the programs, services, and activities are readily accessible to and usable by Plaintiff;

      f.  Failing to provide reasonable modifications to ensure meaningful access to Defendants' services, programs, and activities at WLAC;

      g.  Using criteria or methods of administration that have the effect of subjecting Plaintiff to discrimination on the basis of disability;

      h.  Failing to prioritize methods that offer services, programs, and activities in the most integrated setting appropriate; and

104.  Regarding program access, the ADA's regulations at 28 C.F.R. § 35.150(a)(3) provide that public entities may refuse to comply with their statutory obligations if doing so would result in a fundamental alteration in the nature of the service, program, or activity or impose an undue financial or administrative burden. Any determination from the public entity, however, must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and the determination must be accompanied by a written statement of the reasons for reaching that conclusion. On information and belief, Defendants have failed to make such a determination accompanied by the required written statement and have, therefore, failed to demonstrate that providing the access Plaintiff seeks to Defendants' programs, services, and activities at WLAC would impose an undue financial or administrative burden.

105.  In committing the acts and/or omissions above, Defendants acted intentionally and with deliberate indifference to Plaintiff's rights.

106.  Defendants' violations of the ADA have harmed and will continue to harm Plaintiff in the future.

107.  Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

108.  Plaintiff is entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs incurred in bringing this action.

109.  Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### Section 504 of the Rehabilitation Act

### 29 U.S.C. §§ 794 *et seq.*

110.  Plaintiff realleges and incorporates by reference the allegations above as if fully set forth here.

111.  Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794; *see also* 34 C.F.R. §§ 104.4(b), 104.21, 104.43(a).

112.  Defendant WLAC has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

113.  Defendant LCCAD has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

114.  WLAC and all of its educational and other benefits, activities, and services are a program, service, or activity that Defendants offer within the meaning of Section 504.

115.  Plaintiff has been and is a qualified individual with a disability within the meaning of Section 504 and is otherwise qualified to participate in or receive benefits from Defendants' programs or activities. 29 U.S.C. § 794(b).

116.  Each Defendant is mandated to "operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons." 34 C.F.R. § 104.22; 34 C.F.R. § 104.21.

117.   Section 504's implementing regulations provide that in complying with the program access requirements, Defendants must "give priority to those methods that serve handicapped persons in the most integrated setting appropriate." 34 C.F.R. § 104.22(b); *see also* 34 C.F.R. § 104.43(d).

118.   In addition, Defendants may not use "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(4).

119.   Defendants' actions and omissions discriminate against Plaintiff solely by reason of her disability in violation of Section 504. Defendants' discriminatory conduct includes but is not limited to:

   a.  Maintaining discriminatory policies and practices;

   b.  Excluding Plaintiff from participation in and denying Plaintiff the benefits of Defendants' programs and activities at WLAC;

   c.  Failing to provide Plaintiff an opportunity to participate in or benefit from Defendants' aids, benefits, or services that is equal to and/or not as effective as that afforded others, and failing to provide Plaintiff an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement in the most integrated setting appropriate to their needs;

   d.  Failing to provide Plaintiff with meaningful access to Defendants' programs and activities at WLAC;

   e.  Failing to operate their programs and activities at WLAC so that when viewed in its entirety, the programs and activities are readily

1    accessible to and usable by Plaintiff; and

2    f.    Failing to provide reasonable modifications to ensure meaningful

3    access to Defendants' programs and activities at WLAC;

4    g.    Using criteria or methods of administration that have the effect of

5    subjecting Plaintiff to discrimination on the basis of disability; and

6    120.    In committing the acts and/or omissions above, Defendants acted

7    intentionally and with deliberate indifference to Plaintiff's rights.

8    121.    Defendants' violations of Section 504 have harmed and will continue

9    to harm Plaintiff.

10    122.    Because Defendants' discriminatory conduct is ongoing, declaratory

11    and injunctive relief are appropriate remedies.

12    123.    Plaintiff is entitled to declaratory and injunctive relief, as well as

13    reasonable attorneys' fees and costs in bringing this action.

14    124.    Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C.

15    § 794(a), Plaintiff prays for relief as set forth below.

16    **THIRD CLAIM FOR RELIEF**

17    **California Government Code § 11135**

18    125.    Plaintiff realleges and incorporates by reference the allegations above

19    as if fully set forth here.

20    126.    Section 11135(a) of the California Government Code provides in

21    relevant part: "No person in the State of California shall, on the basis of . . .

22    disability, be unlawfully denied the benefits of, or be unlawfully subjected to

23    discrimination under, any program or activity that is funded directly by the state or

24    receives any financial assistance from the state."

25    127.    Defendant WLAC receives financial assistance from the State of

26    California sufficient to invoke the coverage of Government Code § 11135 *et seq*.

27    WLAC has received such financial assistance at all times relevant to the claims

28    asserted in this Complaint.

128.    Defendant LACCD receives financial assistance from the State of California sufficient to invoke the coverage of Government Code § 11135 *et seq*. LACCD has received such financial assistance at all times relevant to the claims asserted in this Complaint.

129.    California Government Code § 11135(b) incorporates the protections and prohibitions contained in the Americans with Disabilities Act ("ADA") and its implementing regulations. Section 11135(b) states in relevant part:

> With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

130.    For all the reasons described above, Defendants have violated and continue to violate the Americans with Disabilities Act and therefore have violated and continue to violate California Government Code § 11135(b).

131.    Independent of any violation of the Americans with Disabilities Act, Defendants have also violated the terms of California Government Code § 1135(a), which prohibits discrimination on the basis of disability.

132.    Pursuant to California Government Code § 11139, Plaintiff has a private right of action to enforce California Government Code § 11135(b).

133.    Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiff the benefits of, and unlawfully subjecting Plaintiff to discrimination under, Defendants' programs and activities and for the reasons set forth above.

134.    Defendants have refused and failed to provide Plaintiff with full and equal access to their facilities, programs, services and activities as required by California Government Code § 11135 *et seq*.

*Cline v. WLAC et al.*, Case No.
Complaint

135.   Defendants' violations of California Government Code § 11135 have harmed and will continue to harm Plaintiff.

136.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

137.   Plaintiff is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

138.   Pursuant to the rights, procedures, and remedies set forth under in California Government Code § 11135 and § 11139, and the California Code of Civil Procedure, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### California Education Code § 66270

139.   Plaintiff realleges and incorporates by reference the allegations above as if fully set forth here.

140.   California Education Code § 66270 provides that "[n]o person shall be subjected to discrimination on the basis of disability . . . in any program or activity conducted by any postsecondary education institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid."

141.   Plaintiff is an individual with a disability within the meaning of the California Education Code.

142.   Defendants have received and continue to receive financial assistance from the State of California.

143.   As a result of Defendants' actions and omissions as described above, Defendants have violated California Education Code § 66270 by denying Plaintiff the benefits of, and unlawfully subjecting Plaintiff to discrimination on the basis of disability in, Defendants' programs or activities at WLAC.

144.   Defendants' violations of California Education Code § 66270 have harmed and will continue to harm Plaintiff.

*Cline v. WLAC et al.*, Case No.
Complaint

145.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

146.   Plaintiff is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

147.   Pursuant to the rights, procedures, and remedies under California law, Plaintiff prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

### Unruh Civil Rights Act

### California Civil Code § 51 *et seq.*

148.   Plaintiff realleges and incorporates by reference the allegations above as if fully set forth here.

149.   California Civil Code § 51(b) provides that "[A]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

150.   The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

151.   Defendants are or operate business establishments within the jurisdiction of the State of California and within the meaning of the California Civil Code Section 51 *et seq.* ("the Unruh Act").

152.   Defendants have violated the Unruh Act by, among other things, denying, aiding, or inciting the denial of Plaintiff's rights to the full and equal accommodations, advantages, facilities, privileges, or services offered by Defendants. Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act.

///

///

153.    Defendants have also violated the Unruh Act by denying, aiding, or inciting the denial of Plaintiff's rights to equal access under California state law and the ADA.

154.    Plaintiff is entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs incurred in bringing this action.

155.    Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code Section 52, Plaintiff prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests:

1.    That this Court assume jurisdiction.

2.    That this Court certify a class of all individuals who have disabilities that make it difficult for them to navigate long distances, up inclines, and/or on uneven terrain, and attend, would like to attend, or will attend on-campus classes or events at West Los Angeles College.

3.    That this Court declare that Defendants to be in violation of Title II of the ADA (42 U.S.C. § 12181 *et seq*.) and its implementing relations; Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq*.) and its implementing regulations; California Government Code § 11135; California Education Code § 66270; and the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq*.).

4.    That this Court issue an injunction ordering Defendant to comply with the statutes set forth in this Complaint, including but not limited to ordering Defendants to:

a.    Ensure that Plaintiff has meaningful access to her classes and any other programs, services, and activities in which she seeks to participate on the WLAC campus, by providing transportation assistance, such as through a campus shuttle or similar service, to Plaintiff and the putative class members, and operate that service in a manner that is accessible to Plaintiff and the putative class members;

30

   b. In consultation with Plaintiff, develop a plan that includes any policy changes necessary for a durable remedy. The plan shall ensure the provision of adequate transportation assistance and services such that Plaintiff and the putative class members have meaningful access to Defendants' programs, services, and activities on the WLAC campus; and

   c. Require any other steps necessary to provide meaningful access for Plaintiff and the putative class members to the College's programs, services, and activities.

 5. That this Court award Plaintiff reasonable attorneys' fees and costs pursuant to federal and California law.

 6. That this Court award Plaintiff such other and further relief as the Court deems to be just, proper, and equitable.

DATED: April 6, 2022   Respectfully submitted,

     DISABILITY RIGHTS CALIFORNIA

     */s/ Autumn M. Elliott*
     Autumn Elliott
     Lucia Choi

     LAW OFFICE OF AARON J. FISCHER

     *s/ Aaron J. Fischer*
     Aaron J. Fischer

     DISABILITY RIGHTS ADVOCATES

     *s/ Stuart Seaborn*
     Stuart Seaborn
     Erin Gallagher

     *Attorneys for Plaintiffs*

*Cline v. WLAC et al.*, Case No.
Complaint